LOTTINGER, Judge.
This is a suit for personal injuries and property damage arising out of an automobile accident which occurred about 4:05 P.M. on November 22, 1957 on Louisiana Highway No. 408 (also referrd to in the record as the Hooper Road), a blacktopped highway situated in the Parish of East Baton Rouge. The petition sets forth that just prior to the accident the plaintiff had been traveling east, and, preparatory to making a left turn to the north side into a private driveway, had come to a stop when he was violently struck from the rear by an automobile driven by the defendant, Kendrick. Negligence is charged against the latter in failing to have his car under control, in failing to see what he should have seen and in failing to keep a proper lookout. Kendrick’s liability insurer, United Service Automobile Association, was joined as a defendant.
The defendants’ answer denied negligence on the part of Kendrick, and, alternatively, pleaded contributory negligence on the part of Stafford in failing to keep a proper lookout, in endeavoring to make a left turn without first ascertaining that the way was clear and in failing to give proper signals and in failing to see what he should have seen. Kendrick reconvened for physical injuries suffered by him and for property damage both individually and for the use and benefit of his insurer.
Following trial on the merits, judgment was rendered dismissing both the plaintiff’s *508 suit and the reconventional demand. The plaintiff has appealed as has the defendant Kendrick insofar as the judgment dismissing his reconventional demand is concerned.
The testimony of State Trooper Aubrey Lee Hamilton was taken by deposition at the instance of the plaintiff. This officer testified that he arrived at the scene of the accident about fifteen minutes after its occurrence. He stated that Kendrick told him he first noticed the danger when about 70 feet from the plaintiff, at which time he was going approximately 25 miles per hour. The Kendrick vehicle traveled 41 feet from the point of impact and the Stafford vehicle traveled 39 feet from the point of impact. He described the road as straight and level, measuring 24 feet in width with 8 foot shoulders on either side. It was raining at the time and, although he stated that the Kendrick vehicle had skidded, the number of feet of skidmarks was undeterminable because of the wet condition of the highway. He testified that Kendrick told him that when he saw that Stafford was going to make a left turn, he applied his brakes but was unable to stop in time.
On cross examination, the officer stated that the point of impact was in the right lane going east, or south of the center line. The Stafford vehicle was in the process of turning left and moving slowly with its left front across the center line when the impact occurred. The damage to the Stafford vehicle was to its left rear. He stated that no witnesses to the accident, other than the occupants of the respective vehicles, could be located.
William F. Martin, retired State Trooper, called by the plaintiff, testified that he had investigated the accident in question but that later on the same night he himself had got in an automobile accident and that as a result of his own accident, he could remember nothing of the subject accident which he had investigated. He was assisted in his investigation by Trooper Hamilton, who was the one who actually prepared the report.
The plaintiff, Emile Stafford, testified that the accident happened on what he called the Hooper Road, about one mile East of Central High School about 4:15-in the afternoon. He was alone in his 1957 Plymouth automobile at the time. The road was an asphalt one and straight and level. A sprinkling rain necessitated that he have his windshield wipers on, and, as he approached to make his left hand turn, he had his left turn indicator on together with his. window down and his left hand out for more than a city block before making the turn. There were two oncoming cars going west and he stopped to wait for these two. cars to pass. In so doing, he came to a complete stop and remained there perhaps a half' a minute or a minute. He stated that he stopped at a point in his right hand lane of traffic almost opposite the driveway of a Mrs. Walker, whom he was going to see to. purchase some eggs. While at a standstill,, nothing happened, but as he commenced his left turn and when the front end of his car was over in the left lane with the left rear-wheel in the middle of the road, he was struck from the rear. His car landed in a canal running parallel to and on the north of the road. He stated that he spoke to-Kendrick, the driver of the other car, after the accident, but that he could not remember what had been said. He admitted that-his car was knocked a distance of some 50 feet and stated that the damage was to. the left rear fender. He testified that before turning he looked through his rear view mirror while stopped and saw nothing-approaching.
On cross examination, the plaintiff testified that he first extended his left hand as. a signal of his intent to make a left turn,, about 300 yards before the Walker driveway. He repeated that two cars were then coming towards him while his hand was. thus extended. He repeated that he did not see the Kendrick car behind him in spite of the fact that he had two rear view mirrors,, one on the windshield inside of the car and' the oisher on the side of the car. He stated, that his car had gone “clean across the left. *509 side of the road and the rear end of my car was in the middle of the road” when he was struck, the car then being in a more or less northeasterly direction as he had not completely straightened up to go into the driveway. He repeated that after the oncoming cars had passed him, he again looked into his rear view mirrors, saw nothing, and then started making his left turn.
Larry L. Kendrick, defendant, called on cross examination, testified that he was driving at a speed not in excess of 45 miles an hour and that when he first saw the Staiford vehicle, he was from 500 to 520 feet behind him. At this time he estimated that the Staiford vehicle was some 880 to 900 feet from the situs of the accident. He further estimated the speed of the Staiford vehicle when he first saw it between 25 and 30 miles per hour at which time he reduced his speed to approximately 25 or 30 miles per hour. He gained on Mr. Staiford until he was approximately 60 feet behind him at which time he judged that his car was roughly 120 feet from the scene of the accident. When he first saw him, that is, when Staiford was about 880 feet from the place where the collision took place, Stafford put his hand out and pulled it back in almost immediately. Both cars continued to proceed after this maneuver took place and this witness went on to describe the accident as having happened as follows:
"I stayed behind Mr. Staiford until his car had passed the first drive on the left and had passed the drive on the right, which was approximately 300 feet between the two drives, and when he was about in that position, at the time I stated, I was approximately 60 feet behind him. I blew my horn a couple of long blasts and moved over into the center of the road to the north lane of traffic to go around Mr. Staiford, and then Mr. Stafford, some 60 feet further up the road, and immediately in front of me, at the time I was over in the north lane of traffic going in an easterly direction, and at that particular time he took a sharp turn to the left in front of me, and I whipped the wheel back to the right in the only effort I figured I could have to avoid the accident.”
This witness stated that the front part of his car struck the Staiford car on the left rear fender starting approximately behind! the door post in the middle of the car. He stated that the two oncoming vehicles had passed the Staiford car at the time the latter had momentarily put his hand out some 880' feet from the place where the collision took place. He stated that he was positive the Staiford electrical blinker was not in operation and that Staiford had made a statement to that effect to the patrolman who investigated the accident. He denied having made a statement to the effect that he did not see the Stafford car until he was approximately 100 feet from the scene of the accident. He said that he tried to apply his brakes but that the Staiford car was so close to him he did not know whether he actually applied them or not.
Maurice A. Sommers, testifying on behalf of the plaintiff, stated that he lived on. the Hooper Road, and that the accident happened in front of his home. At the time, he was practicing basketball at school, but did! have occasion to go to the scene where he' saw both parties after the accident. He stated definitely that he heard Mr. Kendrick say he did not see the Stafford car until he-was on a bridge some 150 feet from where the accident occurred and that when he saw Stafford, the latter was turning and that he was going too fast and did not have time to stop. He further stated that Kendrick said when he applied his brakes he skidded because the road was wet. This witness said that Kendrick’s statements were made in the presence of his brother, who, at the time of trial, was in the rear and also in the presence of Mrs. Walker and his father. The latter was not called as a witness.
Mr. Kendrick, recalled on further cross examination after having heard Sommers’ testimony, said that to his knowledge he had said nothing to the latter. When asked what his speed was when approximately 10 *510 feet to the rear of the Stafford car, he replied that when he was 60 feet to its rear he was going at approximately 25 or 30 miles an hour and had accelerated normally to pass, and, therefore, was probably going 30 to 35 miles an hour at that particular time. He stated that when he sounded his horn, he was in the south lane of traffic and sounded it several times before he left that lane to pull over to the passing lane.
Mrs. Lavilla Walker, called as a witness on behalf of the plaintiff, stated that she witnessed the accident which occurred right in the front of the driveway to her home on the Hooper Road. She stated that she was expecting. Mr. Stafford and saw him coming in his automobile at the time he crossed the bridge on the highway some distance to the west of her home. She stated that he was giving a left hand signal by having his blinkers on and by holding his hand out. She stated further that she saw Mr. Kendrick approaching and she estimated his speed between 75 and 80 miles per hour. The two west bound automobiles had just passed Stafford before he was hit. She testified that Mr. Kendrick applied his brakes when he was about 50 or 60 feet away from Stafford but the car skidded on down the road and hit the Stafford vehicle.
On cross examination this witness stated that she was standing about 60 or 70 feet from where the wreck took place and had a good view of the road. She estimated that Stafford had stopped in his lane of traffic either thirty seconds or a minute before starting to make his turn. She saw Kendrick about the same time that Stafford started to make his turn at which time Kendrick was either right at the bridge or just on the other side of the bridge further down the highway. She estimated the distance of this latter bridge from her driveway as being about 75 or 80 feet. Most of the damage to the Stafford vehicle was to the back of the left rear fender. She stated further that she did not hear Kendrick blow his horn.
In .response to a question by the court, Mrs. Walker stated that she saw the Kendrick car for the first time just before he got to the bridge to the west of her driveway at which time Stafford was stopped to allow the other cars to pass and was preparing to make his turn. She stated that she was watching the Kendrick car because it was coming so fast she was expecting a wreck. The other two cars going west at that time had already crossed the bridge and had gone beyond the Kendrick car.
Jessie Richard Jones, called as a witness on behalf of the defendant, stated that he was in the vicinity of the Hooper Road on the day of the accident coming in from work. He did not see the accident but saw the Kendrick car shortly prior thereto from a distance of approximately 100 yards as he passed by. He estimated his speed at that time between 35 and 40 miles per hour at which time he was approximately % of a mile west of the scene of the accident.
Mrs. Larry Kendrick stated that the day following the accident she and her mother visited the scene and saw the plaintiff shoveling dirt from the top of a mound in front of Mrs. Walker’s home. She stated further that they talked with Stafford at the time. Mrs. Willard Noble, the mother of Mrs. Kendrick, corroborated her testimony. Stafford denied having shovelled any dirt the morning following the accident and further stated that he did not remember talking or even having seen either Mrs. Kendrick or her mother.
The trial judge concluded, and rightly so, we think, that without doubt the Stafford vehicle was moving when it was struck. This is borne out by the position of the Stafford car after it came to rest. We further agree with the trial judge’s finding that the Stafford car was struck on its left rear and that the point of collision was in the south or east bound lane as testified to by Officer Hamilton.
The duty imposed on one negotiating a left turn is too well settled to require a citation of authority and it is obvious that Stafford did not exercise that degree of care required of him. Assuming *511 for the sake of argument, that he signalled by hand and blinker his intention to turn, as he said he did, there is no excuse for him not having seen the Kendrick car in close proximity to his rear, and his failure to do so, constituted a proximate cause of the accident.
Nor do we think Kendrick to have been free of negligence. Driving conditions. wer.e certainly not the best for.it was drizzling and the road was slippery. He could and should have seen the Stafford car in front of him in plain view either coming to a stop or at a standstill and should have had his car under complete control, which he obviously did not. He was not operating his car in a manner commensurate with the circumstances and we believe that his negligence, too, was a contributing cause of the accident.
There is no manifest error in the judgment appealed from and the same is therefore affirmed.
Judgment affirmed.